1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   HAROLD DWANE GIBBONS,

11            Plaintiff,                        No. 2:10-cv-02880 KJN

12       v.

13   COMMISSIONER OF SOCIAL
     SECURITY ADMINISTRATION,
14
             Defendant.                     ORDER
15   _____/

16            Plaintiff Harold Dwane Gibbons ("plaintiff"), who is representing himself in this

17   action, seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner" or "defendant") denying plaintiff's request for retroactive payment of

19   additional Title II benefits.[1]  Plaintiff argues he is entitled to these additional payments because

20   the Social Security Administration improperly withheld them based on the belief that plaintiff

21   was married to another Social Security benefits recipient, namely, Ms. Rebecca Diskin.  Plaintiff

22   argues that he and Ms. Diskin were housemates but were not married, such that his benefits

23   payments should not have been reduced.  Plaintiff further argues that a Social Security

24   _____

25      [1] This case was referred to the undersigned pursuant to Eastern District of California Local
     Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before
26   a United States Magistrate Judge (Dkt. Nos. 13, 18).  28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E.
     Dist. Local Rule 301.

1

1   Administration employee told plaintiff and Ms. Diskin that they could not receive any benefits

2   unless they claimed to be married, and that as a result of the employee's coercion, plaintiff and

3   Ms. Diskin reluctantly claimed they were married.  (See generally Pl.'s Mot. for Summ. J., Dkt.

4   No. 19-1.)

5           In his motion for summary judgment, plaintiff argues that the administrative law

6   judge ("ALJ") in this case erred in determining that plaintiff and Ms. Diskin held themselves out

7   as married.[2]  (See generally Pl.'s Mot. for Summ. J.)  Defendant filed an opposition to plaintiff's

8   motion and a cross-motion for summary judgment.  (Def.'s Opp'n & Cross-Motion for Summ. J.,

9   Dkt. No. 20.)  For the reasons stated below, the court denies plaintiff's motion for summary

10   judgment and grants the Commissioner's cross-motion for summary judgment.

11   I.      BACKGROUND[3]

12           Plaintiff filed applications for Supplemental Security Income and Disability

13   ───────────────────────────

14      [2]   The issue before the ALJ was whether plaintiff and Ms. Diskin held themselves out as a
    married couple under the applicable rules such that the reduction in Mr. Diskin's benefits payments
15   was proper.  (AR 433 (Plaintiff's Request for Reconsideration filed Feb. 8, 2007, seeking
    reconsideration on grounds that "I have never been married to Ms. Diskin and never will be."); see
16   also AR 449-51 (Notice of Reconsideration dated Feb. 27, 2007 ("You are disputing the martial
    status determination" and "[W]e find the decision that you and Ms. Diskin were a married couple
17   for SSI purposes to be correct."); AR 438 ("Rebecca A. Diskin and I were never married at any time"
    and were "not married," had a "friendship relationship" only, and were "room-mates" only)
18   (emphases in original).)  Likewise, plaintiff's moving papers frame the issues currently before the
    court as: (1) improper invocation of the "Windfall Offset Provision," and (2) the agency's improper
19   determination that plaintiff and Ms. Diskin were married "at the time of [plaintiff's] filing for SSDI
    benefits in 2003.  (Pl.'s Mot. for Summ. J. at 1.)  Defendant notes that plaintiff's moving papers also
20   mention in passing, and with no citations to supporting evidence, that plaintiff was never allowed
    to see his "complete personal SSA file."  (Pl.'s Mot. for Summ. J. at 2-3 (plaintiff's "complete
21   personal SSA file has been missing and unavailable to him up until said file was sent to [plaintiff]
    with the Defendant's answer to this complaint").)  However, plaintiff's moving papers fail to explain
22   when plaintiff sought his file and how plaintiff's alleged inability to review his complete file bears
    on the issues of his marital status and/or reduced benefits payments.  Further, as defendant correctly
23   notes (Def.'s Opp'n & Cross-Motion for Summ. J. at 10 n.8), plaintiff did not raise the issue of the
    availability of plaintiff's file before the ALJ (AR 479-502), and the ALJ did not make any factual
24   determinations about the availability of the file.  In any event, plaintiff confirms that he now has a
    copy of his file.  (Pl.'s Mot. for Summ. J. at 2-3.)

25      [3]   Because the parties are familiar with the factual background of this case, the undersigned
    does not exhaustively relate those facts here.  The facts will be addressed only insofar as they are
26   relevant to the issues presented by the parties' respective motions.

Insurance Benefits in August of 2003. (Admin. Record ("AR") 66-68, 389-401.) An ALJ issued

a decision dated August 13, 2005, finding that plaintiff was disabled.[4] (AR 27-35.) The agency

determined that plaintiff was entitled to retroactive benefits, and plaintiff requested

reconsideration of the amount of his retroactive benefits (AR 433) and requested a hearing before

an ALJ (AR 435), on the grounds that he had not received the proper payment amounts due to the

agency's belief that plaintiff was married to Ms. Diskin. The ALJ conducted a hearing regarding

plaintiff's claim on December 10, 2007. (AR 479-502.) Plaintiff was represented by counsel at

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

1   the hearing and testified.  (Id.)

2          In a written decision dated February 7, 2008, the ALJ found that the agency

3   properly determined plaintiff's retroactive benefit amount, on the grounds that plaintiff and Ms.

4   Diskin held themselves out as a married couple under the applicable rules from May 2003

5   through December 2006.  (AR 16-21.)  The ALJ's decision became the final decision of the

6   Commissioner when the Appeals Council denied plaintiff's request for review.  (AR 7-10.)

7   Plaintiff subsequently filed this action.

8          B.      Summary of the ALJ's Findings

9          This case differs from the typical Social Security case in that plaintiff is not

10  challenging a finding that he is not disabled or claiming that the ALJ did not properly conduct the

11  requisite five-step analysis.  See Lester, 81 F.3d at 828 n.5  Instead, plaintiff challenges the

12  agency's determination of his marital status.  Stated differently, plaintiff challenges the ALJ's

13  finding that plaintiff and Ms. Diskin held themselves out as married, which resulted in a

14  reduction of plaintiff's retroactive benefits under the applicable regulations.  (AR 19-21.)

15         In his decision, the ALJ described plaintiff's hearing testimony, discussed the

16  applicable law regarding whether a claimant is "married" for the agency's purposes, described

17  several specific documents in the record whereby plaintiff identified Ms. Diskin as his spouse,

18  noted generally the "multiple documents" in the record whereby plaintiff and/or Ms. Diskin

19  indicated they were married to each other.  (AR 20-21.)  The ALJ also noted that the lack of *any*

20  documents in the record suggesting that plaintiff had been "coerced" into describing Ms. Diskin

21  as his spouse and/or that he disputed being married.[5]  (AR 21.)  The ALJ then concluded that,

22  after "careful consideration of the evidence of record," plaintiff and Ms. Diskin held themselves

23  out as married from May 2003 through December 2006.  (Id.)  The ALJ also concluded that, as a

24

25         [5]  The record contains documents related to plaintiff's request for a hearing and request for
    reconsideration wherein plaintiff raises these issues, none of the documents protesting alleged
26  "coercion" bears a date within the relevant period of retroactive benefits payments, namely, May
    2003 through December 2006.

4

1  result, the agency's correctly applied the "windfall offset provision"[6] to plaintiff.  (Id.)

2  II.    STANDARDS OF REVIEW

3          The court reviews the Commissioner's decision to determine whether it is (1) free

4  of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

5  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

6  Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

7  Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "Substantial evidence means

8  more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

9  reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.

10  Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (citing Andrews v. Shalala, 53 F.3d 1035,

11  1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690.  "The ALJ is responsible for

12  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

13  Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)

14  ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

15  Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g);

16  see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a

17  whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

18  ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198

19  (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the

20  ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.

21  2005)).  However, the court "must consider the entire record as a whole and may not affirm

22  simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198

23  (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v.

24  Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "To determine whether substantial evidence

25
26    [6] See 42 U.S.C. § 1320a-6(a); 20 C.F.R. § 404.408b; see also 20 C.F.R. § 416.1801(c); 20 C.F.R. § 416.1802(b); 20 C.F.R. 41.1806.

5

1  supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing

2  both the evidence that supports and that which detracts from the ALJ's conclusion."  Andrews,

3  53 F.3d at 1039.

4          "If additional proceedings can remedy defects in the original administrative

5  proceedings, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 637

6  (9th Cir. 1981).  However, the court's review is constrained to the reasons asserted by the ALJ in

7  the ALJ's decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the

8  reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a

9  ground upon which he did not rely.");  accord Tommasetti, 533 F.3d at 1039 n.2 (declining to

10  review reasons provided by the district court in support of the ALJ's credibility decision that

11  were not "expressly relied on" by the ALJ during the administrative proceedings);  accord Pinto v.

12  Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (noting that the Court "cannot affirm the decision

13  of an agency on a ground that the agency did not invoke in making its decision");  Gonzalez v.

14  Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of

15  the ALJ's conclusion – especially when his opinion indicates that the conclusion may have been

16  based exclusively upon an improper reason.");  Barbato v. Comm'r of Soc. Sec. Admin., 923 F.

17  Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (remand is appropriate when a decision does not

18  adequately explain how a decision was reached, "[a]nd that is so even if [the Commissioner] can

19  offer proper post hoc explanations for such unexplained conclusions," because "the

20  Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as

21  adopted by the Appeals Council") (citation omitted).

22  III.    DISCUSSION

23          A.    The ALJ Did Not Commit Legal Error

24          As described above, plaintiff applied for benefits under two separate titles of the

25  Act, Title II and Title XVI.  (AR 66-68, 389-401.)  If an individual is found to be disabled and to

26  be owed retroactive benefits for previous months, the agency will not pay that individual the full

Title II *and* Title XVI benefits for those months.  Instead, the agency reduces the retroactive Title II benefit payment amount for those previous months by the amount of any Title XVI payments that the individual has already received.  See 42 U.S.C. § 1320a-6; 20 C.F.R. § 404.408b, 416.1123(d)(1).  For a married couple, the agency will reduce the retroactive Title II benefits by the Title XVI payments received by both spouses.  42 U.S.C. § 1320a-6; 20 C.F.R. § 404.408b; see also Soc. Sec. Admin., Program Operations Manual System ("POMS") § GB 02610.014(C)(1)[7] (stating that the agency will use Title XVI payments made to the "couple" in determining offset) (available at https://secure.ssa.gov/apps10/poms.nsf/lnx/ 0202610014 (last visited March 20, 2012).

The agency looks to state law in determining whether an individual is married, *but* "if a man and woman are found to be holding themselves out to the community in which they reside as husband and wife, they shall be so considered for purposes of this title notwithstanding any other provision of this section."  42 U.S.C. § 1382c(d)(2).  Under the applicable regulations, the agency "will consider someone to be your spouse (and therefore consider you to be married) for SSI purposes if [. . .] [y]ou and an unrelated person of the opposite sex are living together in the same household at or after the time you apply for SSI benefits, and you both lead people to believe that you are husband and wife."  20 C.F.R. § 416.1806(a)(3).  If more than one person can be considered an individual's spouse based on the Act and the agency's regulations, the agency "will consider the person you are presently living with to be your spouse for SSI purposes."  20 C.F.R. § 416.1806(b).  Further, the applications provide that when a claimant applies for SSI benefits, the "general rule" is that "proof is unnecessary" when it comes to marital status.  20 C.F.R. § 1821(a) ("If you tell us you are married we will consider you married unless we have information to the contrary.  We will also consider you married, on the basis of your

---

[7]    The Ninth Circuit Court of Appeals has stated that "[t]he POMS does not have the force of law, but it is persuasive authority."  Warre v. Comm'r of Soc. Sec. Admin, 439 F.3d 1001, 1005 (9th Cir. 2006).

1    statement, if you say you are living with an unrelated person of the opposite sex and you both

2    lead people to believe you are married.")

3            Properly applying the above authorities, the ALJ determined that because plaintiff

4    and Ms. Diskin held themselves out as married — a factual finding analyzed separately below —

5    plaintiff's retroactive benefits payments were properly reduced.  (AR 19-21.)  As the ALJ

6    explained,

7            [S]ection 1614(d)(2) of the Social Security Act [now 42
             U.S.C. § 1382c(d)(2)] provides that in determining
8            whether two individuals are husband and wife for the
             purposes of this title [Title XVI of the Act], appropriate
9            state law shall be applied; except that — (2) if a man and
             woman are found to be holding themselves out to the
10           community as husband and wife, they shall be so
             considered for the purposes of this title notwithstanding
11           any other provision of this section.  Section 416.1806(a)
             provides that an individual will be considered married if
12           he or she is legally married under the laws of the State of
             their home *or* if two unrelated people of the opposite sex
13           are living in the same household at or after the SSI
             application is filed, and both lead people to believe they
14           are husband and wife.

15   (AR 20 (emphasis added).)

16           To the extent plaintiff argues that the ALJ committed legal error by applying the

17   above authorities to plaintiff, plaintiff's argument is not well-taken.  Specifically, plaintiff argues

18   that he could not possibly be considered Ms. Diskin's spouse because she was legally married to

19   another man.  (Pl.'s Mot. for Summ. J. at 1.)  Under the applicable regulations cited above,

20   however, a person can be considered the spouse of more than one individual, and the agency will

21   consider the person with whom one is living as his spouse.  See 20 C.F.R. § 416.1806(b).  The

22   agency previously explained this rule to plaintiff.  (AR 436 (Notice of Reconsideration dated

23   Feb. 27, 2007).)  Plaintiff's disagreement with this regulation and other applicable rules does not

24   mean the ALJ committed legal error by applying those rules, and the ALJ explained as much.

25   (See AR 21 ("[w]hile the claimant may feel the Social Security Regulations are unfair, the

26   undersigned has no authority to change or amend them in order to arrive at a decision desired by

8

1  a claimant.")   Accordingly, plaintiff has not shown the ALJ to have committed legal error by

2  analyzing plaintiff's circumstances under the above-cited authorities.  See Bruce, 557 F.3d at

3  1115.

4          B.        The ALJ's Finding That Plaintiff And Ms. Diskin Held Themselves Out As
                     Married Was Supported By Substantial Evidence

5

6                   In making the factual determination that plaintiff and Ms. Diskin held themselves

7  out as married during the relevant time period, the ALJ described specific documents in the

8  record wherein plaintiff indicated that Ms. Diskin was his wife.  (AR 20.)  For instance, the ALJ

9  described an Application for Supplemental Security Income filed August 13, 2003, whereby

10 plaintiff identified "Rebecca Gibbons" as his "spouse."[8]  (AR 20 citing AR 389.)  The ALJ also

11 cited to a Statement of Claimant or Other Person dated August 3, 2006, a document signed by

12 plaintiff *and* "Rebecca Diskin Gibbons" — with Ms. Diskin using plaintiff's surname — under

13 penalty of perjury.  (AR 20 (citing AR 406-07).)  The ALJ also cited a Statement for Determining

14 Continuing Eligibility For Supplemental Security Income Payments dated August 3, 2006, which

15 identifies "Rebecca Gibbons" as plaintiff's "spouse" and "Rebecca" as plaintiff's "spouse living

16 with" plaintiff.  (AR 20 (citing AR 408-15).)

17                  Aside from these specific documents, the ALJ also broadly referenced "multiple

18 documents" in the record plaintiff "signed indicating [Ms. Diskin] was his wife."  (AR 21.)  The

19 record indeed contains numerous such documents.  (See AR 21; AR 389-400 (Application for

20 Supplemental Security Income dated August 13, 2003, and signed by plaintiff and "Rebecca

21 Gibbons," checking the "Yes" box in response to "Are you and your spouse living together" and

22 other boxes referring to each other as "spouses"); AR 370-74 (Application for Supplemental

23 Security Income dated August 29, 2003, and signed by both plaintiff and Ms. Diskin under

24

25          [8]  Plaintiff does not dispute that he and Ms. Diskin lived together during the relevant time
    period.  (Pl.'s Mot. for Summ. J. at 1 (confirming plaintiff lived with Ms. Diskin from 2003 to 2007
26  and was payee for her benefits from 2003 to 2006).

1    penalty of perjury, wherein Ms. Diskin identified herself as "married to Harold Dwane Gibbons,"

2    and wherein plaintiff identifies himself as "married to Rebecca Anne Diskin.").)  The ALJ also

3    considered all the "evidence of record" (AR 21), which contains documents whereby Ms. Diskin

4    identified herself as married to plaintiff.   (See AR 386-88 (SSI Monthly Manual Payment

5    Computation Summary identifying Ms. Diskin as "Rebecca Gibbons"); AR 407 (signing under

6    penalty of perjury as "Rebecca Diskin Gibbons").)  In sum, documents in the record support the

7    ALJ's finding that plaintiff and Ms. Diskin held themselves out as married.[9]

8              Further, while plaintiff testified that Social Security employees coerced and

9    misled him and Ms. Diskin into representing that they were married (AR 485), the ALJ did not

10   credit this testimony.[10]  (AR 21.)  Instead, the ALJ specifically explained that the record lacks a

11   single document from the relevant period suggesting that plaintiff ever indicated having been

12   "coerced into saying or signing documents" reflecting that he "was married to Rebecca Diskin or

13   holding out as husband and wife."  (AR 21.)  The ALJ explained, "there is no evidence in the

14   record that [plaintiff] ever disputed being married to [Ms. Diskin]; there is no evidence in the

15   record that Social Security told Ms. Diskin she had to use [plaintiff's] last name; and there is no

16   evidence that [plaintiff] was misled by Social Security."  (AR 21.)

17             In sum, and as described above, the ALJ relied on specific documentary evidence

18   in the record to support his finding that plaintiff and Ms. Diskin indeed held themselves out as

19

20        [9]  Defendant also highlights numerous documents in the record indicating that plaintiff told
     his physicians that he was married during the period he was living with Ms. Diskin.  (Def.'s Opp'n
21   & Cross-Motion for Summ. J. at 8-9 (citing AR 271, 318, 157, 162, 260, 287.)  Defendant argues
     that plaintiff "informed third parties, including his doctors" that he was married to Ms. Diskin, such
22   that even if plaintiff's claims of "coercion" by agency employees were true, this would not explain
     "why [p]laintiff told his doctors that he and Ms. Diskin were married."  (Id. at 9-10.)  Because the
23   court's review is limited to the grounds stated in the ALJ's decision, however, see Tommasetti, 533
     F.3d at 1039 n.2, and because the ALJ did not specifically note plaintiff's representations to his
24   physicians, the undersigned did not consider these medical documents in analyzing whether the
     ALJ's finding is supported by substantial evidence.

25        [10]  In his moving papers, plaintiff claims that during the hearing, the ALJ "said time and time
     again that 'They can't do this,'" and "'Why are they doing these things.'"  (Pl.'s Mot. for Summ. J.
26   at 2.)  The hearing transcript does not corroborate plaintiff's version of events.  (AR 481-502.)

1   married.  Similarly, the ALJ relied on the record's utter *lack* of documents suggesting that

2   plaintiff was "coerced" into describing himself as married, coerced into describing himself as

3   Ms. Diskin's "spouse," or that plaintiff made such representations begrudgingly or under protest.

4   There is more than a mere "scintilla" of evidence supporting the ALJ's determination that

5   plaintiff and Ms. Diskin held themselves out as married during the relevant period.  See Bray,

6   554 F.3d at 1222 ("[s]ubstantial evidence means more than a mere scintilla but less than a

7   preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

8   support a conclusion.")  Plaintiff has not shown that the ALJ's finding that plaintiff and Ms.

9   Diskin held themselves out as married is unsupported by substantial evidence.

10  V.    CONCLUSION

11          For the foregoing reasons, IT IS HEREBY ORDERED that:

12          1.      Plaintiff's motion for summary judgment (Pl.'s Mot. for Summ. J., Dkt.

13  No. 19-1) is denied;

14          2.      Defendant's cross-motion for summary judgment (Def.'s Opp'n & Cross-

15  Motion for Summ. J., Dkt. No. 20) is granted; and

16          3.      The Clerk of Court is directed to enter judgment in the Commissioner's

17  favor.

18          IT IS SO ORDERED.

19  DATED:  March 22, 2012

20

21                                          _____
                                            KENDALL J. NEWMAN
22                                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26

11